IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| In re: | ) | Chapter 11 |
|---|---|---|
| IDEAL SLEEVES INTERNATIONAL, LLC | ) | Case No. 5:23-bk-01418-MJC |
| Debtor. | ) | |
| In re: | ) | Chapter 11 |
| R.B. DWYER CO., INC. | ) | Case No. 5:23-bk-01420-MJC |
| Debtor. | ) | |
| In re: | ) | Chapter 11 |
| COLOR CRAFT FLEXIBLE PACKAGING, LLC | ) | Case No. 5:23-bk-01421-MJC |
| Debtor. | ) | |

**PATHWARD, NATIONAL ASSOCIATION'S OBJECTION TO THE MOTION FOR INTERIM AND FINAL ORDERS PURSUANT TO 11 U.S.C. § 363(c) AND FED.R.BANKR.P. 4001 AUTHORIZING USE CASH COLLATERAL AND PROVIDING ADEQUATE PROTECTION**

Pathward, National Association, f/k/a Crestmark, a division of MetaBank, National Association ("Pathward"), by its counsel Pillar+Aught and Taft Stettinius & Hollister LLP, objects to the Motion of Debtors and Debtors-In-Possession for Interim and Final Orders Pursuant to 11 U.S.C. § 363(c) and Fed.R.Bankr.P. 4001 Authorizing Use Cash Collateral and Providing Adequate Protection [Docket No. 9] (the "Motion") as a final order, for the following reasons:

1

## Summary of Objection

1. The Debtors have been in default to Pathward since December of 2022 due to, among other things, its inability to maintain the required advance formula and the failure to pay taxes when due.

2. One of the significant problems that Debtors have not been able to overcome is their inability to generate a profit and purchase inventory, and their projections clearly show that they will not be able to pay their projected expenses and operate in this Chapter 11 case.

3. The Debtors' Motion is an admission that the Debtors are unable to operate in these Chapter 11 cases without additional funding. The Debtors have no current or potential source of funding.

4. Debtors' cash flow projections, attached to the Motion as Exhibit A [Docket No. 9-1], reflect that the Debtors will have a cash flow shortfall of approximately $1,000,000 during the remaining 10 weeks of its cash flow projections. For example, the week ending June 30, 2023 indicates that the Debtors anticipate to collect $556,678 while disbursing $1,168,234. Similarly, the week ending July 7, 2023, show anticipated collections of $391,000 with disbursements of $521,841.

5. The Declaration of David Conley in Support of First Day Motions [Docket No. 4] ("Declaration") reflects the Debtors' snapshot of cash and accounts receivable as follows:

| | |
|---|---|
| Ideal cash: | $30,000 |
| Ideal accounts receivable: | $335,100 |
| Dwyer cash: | $36,849 |
| Dwyer accounts receivable: | $1,132,082 |
| Color cash: | $33,522 |

    Color accounts receivable:    1,053,224

6. The Declaration further indicates that each Debtor has other assets with asserted <u>book</u> value of:

    Ideal:    $0

    Dwyer:    $4,121,000

    Color:    $2,929,544

7. The foregoing does not break out inventory, but the Debtors' borrowing base report indicates that, as of June 27, 2023:

    Ideal eligible inventory:    $119,199

    Dwyer eligible inventory:    $857,277.50

    Color eligible inventory:    $118,427.00

8. Taking the Debtors' accounts receivable and inventory values at face value reflects:

    Ideal:    $484,299

    Dwyer:    $2,026,208.50

    Color:    $1,205,173

9. As of June 27, 2023, the Debtors owe Pathward approximately $2,520,417 and owe the SBA approximately $505,000.

10. Debtors have failed to provide any evidence that the offered replacement liens are adequate. Paragraph 9 of the Motion indicates the Debtors will adequately protect Pathward by remaining current on principal and by providing replacement liens. The Pathward facility is a revolving credit, meaning there are no scheduled principal and interest payments due.

11. The Debtors did not provide any projections showing the starting values of working capital or the projected value of each on a going forward basis. Accordingly, the Debtors have not

proffered any evidence that supports their assertion that replacement liens will adequately protect Pathward's secured claim. Rather, as noted above, the Debtors' cash projections indicate that they will not have sufficient funds to operate.

12. Each of the Debtors must offer adequate protection to Pathward individually and not as part of any administratively consolidated cases, but have not yet done so.

## Argument

### I. The Proposed Adequate Protection Package is Insufficient.

13. The concept of "adequate protection" is defined in the Bankruptcy Code only by way of examples as set forth in section 361. That section provides in pertinent part:

> When adequate protection is required under section … 364 of this title of an interest of an entity in property, such adequate protection may be provided by—
>
> (1) requiring the trustee to make a cash or periodic cash payments to such entity to the extent that ... any grant of a lien under section 364 of this title results in the decrease in the value of such entity's interest in such property;
>
> (2) providing to such entity an additional or replacement lien to the extent that such stay, use, sale, lease, or grant results in a decrease in the value of such entity's interest in such property; *or*
>
> (3) granting such other relief*,* other than entitling such entity to compensation allowable under section 503(b)(1) of this title as an administrative expense, as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.

11 U.S.C. § 361.

14. Courts have noted that secured creditors are entitled to adequate protection to the extent of the anticipated or actual decrease in value of the secured collateral during the bankruptcy case. *In re Gunnison Ctr. Apts., L.P.,* 320 B.R. 391, 396 (Bankr. D. Colo. 2005); *In re Elmira Litho, Inc.,* 174 B.R. 892, 902 (Bankr. S.D.N.Y. 1994).

15. In this case, the Debtors have not proffered any evidence that the proposed adequate protection actually protects Pathward's secured claim. The Debtors do not provide any projected values of working capital on a going forward basis.

**II. The Budget Shows the Debtors Will Operate at a Loss.**

16. The proposed cash flow shows the Debtors will not have sufficient funds to operate. Indeed, the Debtors' Motion indicates that these cases will be administratively insolvent.

17. The Debtors' cash flow projects the Debtors' accumulated cash flow as follows:

| | |
|---|---|
| June 30 | negative $601,556 |
| July 7 | negative $732,397 |
| July 14 | negative $684,181 |
| July 21 | negative $805,431 |
| July 28 | negative $827,166 |
| August 4 | negative $921,506 |
| August 11 | negative $859,122 |
| August 18 | negative $958,491 |
| August 25 | negative $975,025 |
| September 1 | negative $1,042,866 |
| September 8 | negative $999,531 |

WHEREFORE, Pathward requests that the Court deny the entry of the Motion and grant additional related relief.

                Respectfully submitted by,

**PILLAR+AUGHT**

By: /s/ Kate Deringer Sallie
Kate Deringer Sallie
Attorney I.D. No. 208116
ksallie@pillaraught.com
4201 E. Park Circle
Harrisburg, PA 17111
(717) 308-9910

- **And** -

**TAFT STETTINIUS & HOLLISTER LLP**

By: /s/ *Richard Kruger*
Richard Kruger (MI-P57142) (*pro hac vice*)
27777 Franklin Road, Suite 2500
Southfield, Michigan 48034
Phone: (248) 351-3000
Facsimile: (248) 351-3082
rkruger@taftlaw.com

*Attorneys for Pathward, National Association*

Dated: June 29, 2023