# EXHIBIT "B"

# LOAN AND SECURITY AGREEMENT
## ("Agreement")

This Agreement dated _May 20_, 2022, is an agreement between **CRESTMARK, A DIVISION OF METABANK, NATIONAL ASSOCIATION** ("Crestmark"), and **R.B. DWYER CO., INC.**, a California corporation, **IDEAL SLEEVES INTERNATIONAL, LLC**, a Pennsylvania limited liability company and **COLOR CRAFT FLEXIBLE PACKAGING, LLC**, a Tennessee limited liability company (individually and collectively referred to as "Borrower"). In this Agreement, Crestmark and Borrower are collectively the "Parties". Any person who guarantees the obligations of Borrower (each a "Guarantor") is required to sign this Agreement. The Parties have the addresses shown on the schedule ("Schedule") which is attached to this Agreement. These are the addresses of the Parties for all purposes (including the addresses for written notices relating to this Agreement) and may be changed by one party giving notice to the other party in writing of the new address.

1.  **PURPOSE.** The purpose of this Agreement, including the Schedule, is to set forth the terms and conditions of Advances (as defined in Section 2A) made from time to time by Crestmark to Borrower (collectively, the "Loan") and the obligations of Borrower. The Schedule is an integral part of this Agreement. Any and all promissory notes now or hereafter signed by Borrower pursuant to this Agreement, including the note for a line of credit and any term loans (individually and collectively referred to as the "Note"), any guaranty(s), and any other documents now or hereafter signed by any of the Parties in connection with this Agreement, the Loan or any document issued by Crestmark or the bank holding the lockbox ("Lockbox Bank"), including subordination agreements or intercreditor agreements, are also all part of the agreement between the Parties and, together with this Agreement, are referred to collectively as the "Loan Documents".

2.  **LOAN; LOAN ADVANCES.**

    A.  Any disbursement of money or advance of credit by Crestmark, including but not limited to amounts advanced for the payment of interest, fees, expenses and amounts necessary to protect, maintain and preserve Crestmark's Collateral under the Loan Documents ("Protective Disbursements"), is referred to collectively as an "Advance". Whether Crestmark makes an Advance is in Crestmark's sole discretion. If an Advance is made, it will be made in accordance with the advance formula set forth in the Schedule ("Advance Formula"); but not at any time to exceed the maximum amount set forth on the Schedule ("Maximum Amount"), provided that Crestmark may choose to make Protective Disbursements in excess of the Maximum Amount or Advance Formula in its sole discretion. Each time Crestmark makes an Advance, including a Protective Disbursement, the Advance will be debited against an account in Borrower's name on Crestmark's books ("Loan Account"), and each payment will be credited against the Loan Account in the manner described in this Agreement.

    B.  The total amount Borrower owes to Crestmark will be the aggregate of the Advances made by Crestmark, the expenses and fees set forth in the Schedule and any and all costs incurred by Crestmark (including reasonable attorney's fees), and interest at the rate set forth in the Note on all Advances (together with all other obligations of Borrower under the Loan Documents, the "Obligations" and/or "Indebtedness").

**C.** Borrower must repay all Advances with respect to the Loan with interest, which is due monthly as specified in the Note, along with all other fees and expenses of Crestmark set forth herein or in the Schedule. Crestmark may in its sole discretion satisfy any Obligations due Crestmark by (i) directly applying any funds in the Lockbox Account, as defined in paragraph 5 below, to the Obligations, (ii) directly applying funds from any reserve to the Obligations, (iii) collecting the Obligations directly from Borrower, (iv) exercising its rights as a secured creditor upon any Collateral, or (e) by any other means lawfully available. Borrower understands that all the Obligations are repayable at any time in full or in part upon demand by Crestmark. Crestmark may make demand for partial payments and such demand will not preclude Crestmark from demanding payment in full at any time.

**D.** Borrower must comply with its representations, promises, covenants and reporting requirements set forth in this Agreement, in the Schedule and in the other Loan Documents. Borrower's failure to do any of the foregoing and/or Guarantor's failure to comply with the terms of its Guaranty are both a default under this Agreement ("Default"). The demand nature of the Obligations is not modified by reference to a Default in this Agreement or the other Loan Documents and any reference to a Default is for the purpose of permitting Crestmark to exercise it remedies for Default, including charging interest at the Extra Rate provided in the Note.

**E.** The aggregate amount of all Advances, plus the expenses and fees set forth in the Schedule, any and all costs incurred by Crestmark (including reasonable attorney's fees), and interest at the rate set forth in the Note on all amounts advanced (the "Loan Amount"), may not, at any time, exceed the "Maximum Amount" or the Advance Formula, and Borrower understands that if at any time it should owe more to Crestmark than the lesser of the Maximum Amount or the Advance Formula it must repay that excess amount immediately, whether or not demand to repay the whole of the Obligations has been made. Protective Disbursements must be immediately repaid whether or not the lesser of the Maximum Amount or the Advance Formula has been exceeded.

**3. RESERVES.** If Crestmark believes in its reasonable discretion that the prospect for repayment of the Obligations is impaired or that its Collateral margin is insufficient, Crestmark may establish cash reserves and credit balances to protect its interests and the repayment of the Obligations. The reserve may be established by reducing the Advance Formula to achieve the target reserve level, withholding monies due Borrower from any payments Crestmark receives, from a cash payment from Borrower or any other method Crestmark chooses. Any money in a reserve account, whether or not it is a cash reserve, need not be segregated from Crestmark's operating funds, and will not earn interest for Borrower, and Crestmark may apply the funds in the reserve account to reduce the Obligations at any time Crestmark elects.

**4. FEES AND EXPENSES.** In connection with the Loan there are several types of fees that may be charged and Borrower may be required to maintain a minimum Loan balance. Such fees and requirements are set forth in the Schedule. In addition, all expenses of every kind incurred by Crestmark in connection with the Loan, any Advance, collection of the Obligations, inspection, and examination are to be paid by Borrower.

2

5.   **LOCKBOX.**  Borrower must immediately notify all persons who are obligated on accounts ("Account Debtors") and any other person or party that is liable to Borrower (collectively a "Debtor") to remit all payments due Borrower to the lockbox address or pursuant to the wire transfer or ACH instructions set forth in the Schedule (the "Lockbox Account"). The remit to address on all documents related to the accounts, including invoices, purchase orders, or contracts ("Documents") must be the Lockbox Account. At Crestmark's request, all Documents must be marked by Borrower to show assignment to Crestmark, and Borrower must notify each Account Debtor by mail that the Account has been assigned to Crestmark and that all payments on the Account, whether made by mail or electronically or otherwise must be made payable to Borrower or Crestmark, at Crestmark's sole discretion, to the Lockbox Account or other address provided by Crestmark in writing. The language used in such notices shall be approved by Crestmark in writing. Crestmark may at any time and from time to time, and at its sole discretion, notify any Debtor or third party payee to make payments payable directly to Crestmark or to notify Debtor of the assignment to Crestmark. All expenses for notification of each Account Debtor will be paid by Borrower.

If notwithstanding the notice to Debtors, Borrower receives any funds from a Debtor, including any cash, checks, drafts or wire transfers from the collection, enforcement, sale or other disposition of the Collateral (defined below), whether derived in the ordinary course of business or not, or if Borrower receives any proceeds of insurance, tax refunds or any and all other funds of any kind, Borrower shall hold such funds in trust for Crestmark, shall not mix such funds received with any other funds, and shall immediately deposit such funds in the Lockbox Account in the form received. That means if the funds are received by mail, the Debtor checks will be sent to the Lockbox Account uncashed, and if the funds are received electronically, the funds will be transferred immediately to the Lockbox Account electronically. Crestmark will have sole possession and control over the Lockbox Account. The Lockbox Bank will process all deposits and Borrower has no right to the Lockbox Account, it belongs to Crestmark. Crestmark is the owner of all deposits in the Lockbox Account, and has no duty as to collection or protection of funds as long as it is not grossly negligent or commits actual fraud. All expenses plus any applicable administration and servicing fees of the Lockbox Account will be paid by Borrower.

6.   **LOAN ACCOUNT.**  All of the Obligations which are owed by Borrower will be shown in the Loan Account and Borrower will receive a monthly statement either by mail, electronically or via access to the Crestmark online system at Crestmark's sole discretion. The statement is binding on Borrower unless Borrower provides a written objection to Crestmark that is actually received by Crestmark within fifteen (15) business days of the time the statement is provided or made available to Borrower. Absent (a) timely objection on the part of Borrower under this Section or (b) manifest error, the calculations and amounts of outstanding Obligations set forth in the monthly statement shall be presumptively correct.

7.   **PAYMENTS.**  Should a check or other credit instrument not be collected after Borrower has been given credit for such payment, then the credit will be reversed and a fee charged at Crestmark's then standard rate. Crestmark, at its sole discretion, may establish reserves as set forth above or not apply a payment that it reasonably believes may be returned unpaid for any reason or disgorged due to a preference claim or garnishment, and in such event the Maintenance Fee (as defined in the Schedule) will still be payable. In the event that any payment received by Crestmark is sought to be recovered by or on behalf of the payer (including a trustee in bankruptcy

3

or assignee for the benefit of creditors), then Borrower agrees to immediately reimburse Crestmark on demand for any amount so recovered and all of Crestmark's expenses in connection with any such proceeding, including reasonable attorneys fees. This provision shall survive termination of this Agreement. Any payments received by Crestmark shall be applied to the Obligations in whatever order Crestmark determines in its reasonable discretion.

8. **SECURITY INTEREST.**

A. Borrower grants to Crestmark a security interest in all of its assets, now existing or hereafter arising, wherever located including all Accounts, Goods, Inventory, Equipment, Chattel Paper, Instruments, Investment Property, specifically identified Commercial Tort Claims, Documents, Deposit Accounts, Letter of Credit Rights, General Intangibles, Contract Rights, customer lists, furniture and fixtures, books and records and supporting obligations for any of the foregoing, and all Proceeds of the foregoing (the "Collateral"), to secure repayment of the Obligations ("Security Interest"). The Collateral also includes all monies on deposit with Crestmark, or on deposit in the Lockbox Account. All capitalized terms used in this Section 8A, which are not otherwise defined shall have the meanings assigned to them in the Uniform Commercial Code as adopted in the State of Michigan (the "UCC"). Without limiting the forgoing, "Accounts" will also mean and include any and all other forms of obligations now owed or hereafter arising or acquired by the Borrower evidencing any obligation for payment for goods of any kind, nature, or description sold or leased or services rendered, and all proceeds of any of the forgoing.

B. Crestmark shall have all of the rights of a secured party under the UCC with respect to the Collateral. Borrower grants Crestmark the authority to file all appropriate documentation for Crestmark to perfect its security interest in the Collateral, including a UCC-1 financing statement listing the Collateral as "All assets of the Debtor, now existing and hereafter arising, wherever located," or similar terms, as well as UCC-3 amendments as may be required from time to time. All expenses of Crestmark relating to searching, filing or protecting the Security Interest are part of the Obligations.

C. The Security Interest gives Crestmark rights with respect to the Collateral and the Security Interest and this Agreement imposes duties upon Borrower which relate to the Collateral. Some of such rights and duties are: (i) the right of Crestmark at any time to notify any persons who may hold any part of the Collateral, such as Account Debtors and other debtors, of Crestmark's Security Interest. Borrower understands that Crestmark may verify Accounts with the Account Debtors; (ii) Borrower must cooperate with Crestmark in obtaining control of any Collateral in the possession of third persons, particularly Collateral consisting of deposit accounts, investment property, letter of credit rights or other Collateral which is evidenced by electronic entries; (iii) except for the right of Borrower to sell its inventory in the ordinary course of business, Borrower shall not sell or transfer any of the Collateral or grant any other security interest in the Collateral, except as Crestmark may specifically agree to in writing. Borrower remains liable to perform all of its obligations with respect to the Collateral such as the recognition of any warranties in inventory sold and Crestmark is under no responsibility to perform any of the obligations of Borrower; and (iv) Borrower must notify Crestmark immediately if it knows that any Account Debtor disputes an Account in an amount

4

that is greater than $25,000.00, whether or not such disputes are deemed valid by Borrower; provided that Borrower must notify Crestmark of all credit memos, regardless of amount.

9. **POWER OF ATTORNEY.** Borrower irrevocably appoints Crestmark, or any person(s) designated by Crestmark, as its attorney-in-fact, which appointment is coupled with an interest and shall remain in full force and effect until all Obligations of Borrower to Crestmark have been fully satisfied and discharged, with full power, at Borrower's sole expense, to exercise at any time in Crestmark's reasonable discretion all or any of the following powers:

A. Receive, take, endorse, assign, deliver, accept and deposit, in the name of Crestmark or Borrower, any and all cash, checks, commercial paper, drafts, remittances and other instruments and documents relating to the Collateral or the proceeds thereof.

B. Change Borrower's address on all invoices and statements of Account mailed or to be mailed to Borrower's customers and to substitute thereon the address designated by Crestmark, to place legends on all invoices and statements of Account mailed or to be mailed to Borrower's customers, and to receive and open all mail addressed to Borrower, or to Borrower's trade name at Crestmark's address, or any other designated address.

C. Upon and after the occurrence of a Default, to change the address for delivery of Borrower's mail to Crestmark's or an address designated by Crestmark. Borrower specifically authorizes Crestmark to sign any forms on behalf of Borrower to affect this change with the United States Postal Service or any third party and requests such change to be accepted.

D. Upon and after the occurrence of a Default, to take or bring, in the name of Crestmark or Borrower, all steps, actions, suits or proceedings deemed by Crestmark necessary or desirable to effect collection of or other realization upon any Collateral.

E. Execute on behalf of Borrower any UCC-1 and/or UCC-3 Financing Statement(s) and/or any notices or other documents necessary or desirable to carry out the purpose and intent of this Agreement, and to do any and all things reasonably necessary and proper to carry out the purpose and intent of this Agreement.

F. Upon and after the occurrence of a Default, to transfer any lockboxes belonging to Borrower to Crestmark at Crestmark's sole discretion.

G. To initiate ACH transfers from Borrower's depository accounts.

H. Upon and after the occurrence of a Default, to endorse and take any action with respect to bills of lading covering any inventory.

I. Upon and after a Default, or at any time in the event that Borrower fails to do so within a reasonable time, execute, file and serve, in its own name or in the name of Borrower, mechanics lien or similar notices, or claims under any payment or performance bond for the benefit of Borrower.

J. Upon and after a Default, or at any time in the event that Borrower fails to do so within a reasonable time, pay any sums necessary to discharge any lien or encumbrance on the

5

Collateral, which sums shall be included as Obligations hereunder, and which sums shall accrue interest at the Extra Rate until paid in full.

10. **REPRESENTATIONS.** Borrower makes the following representations and warranties to Crestmark and such representations and warranties must be true at all times until the Obligations are paid in full. If Borrower learns that a representation and warranty once made is no longer true, it has the duty to immediately notify Crestmark in writing:

A. Borrower is in good standing under the laws of the state of its organization and is authorized to conduct business in any state that in conducts business. Borrower has the power and authority to enter into this Agreement, and the persons signing this Agreement and all persons who sign any documents with Crestmark have the appropriate authority. Borrower's organization identification number, state of organization, and addresses where it conducts business is as shown on the Schedule.

B. Borrower's entry into the Loan Documents do not violate any agreement which Borrower has or which binds Borrower.

C. The Loan Documents are fully enforceable against Borrower and the Collateral.

D. There are no litigation or criminal charges pending or threatened against Borrower or Guarantor and neither Borrower nor Guarantor are in default of any order or judgment of any court or any governmental agency of any kind. There are no unsatisfied liens or judgments pending against Borrower in any jurisdiction except as shown on the Schedule.

E. The financial information furnished by Borrower to Crestmark has been prepared in accordance with generally accepted accounting principles, all financial statements are true and correct, and any projections of the business operations of Borrower that have been given or will be given to Crestmark in the future will be based upon Borrower's reasonable assumptions and estimates.

F. Borrower is the owner of all of the Collateral and there are no other liens or claims against the Collateral, except the Security Interest of Crestmark or as shown on the Schedule.

G. All of the Collateral is personal property and none of the Collateral will be permanently affixed to real estate.

H. Borrower has filed and will file all federal, state, local and foreign tax returns that it is required to file and has paid and will pay all taxes and all other governmental charges as they become due.

I. Borrower is able to pay its debts as they become due and has sufficient capital to carry on its business. Borrower's obligations under this Agreement and the Loan Documents, including the obligation to repay the Loan and the grant of the Security Interest, do not render Borrower insolvent.

J. Borrower only uses the fictitious names, d/b/a's, tradenames and tradestyles set forth on the Schedule (collectively the "Tradenames"), and Borrower certifies that all sales

6

and any and all business done in the name of the Tradenames are the sales and business of Borrower. Any and all checks, remittances or other payments received in the name of any of the Tradenames are Borrower's sole and exclusive property, and are subject to Crestmark's security interest hereunder. Any and all authority given to Crestmark by Borrower in this Agreement or elsewhere to endorse Borrower's name on any checks, negotiable instruments or other remittances extends with equal and full force and effect to any checks, negotiable instruments, and other remittances received in the name of any Tradename.

K. All Accounts assigned to Crestmark by Borrower are and will at all times be bonafide accounts arising from the sale of inventory or providing services, and are not subject to discounts, deductions, allowances, contra items, offset or counterclaim and are free and clear of all encumbrances of any kind whatsoever, except as disclosed to Crestmark in writing and approved by Crestmark in writing.

L. Borrower's assignment of any Accounts to Crestmark pursuant to this Agreement will not at any time violate any federal, state and/or local law, rule or regulation, court or other governmental order or decree or terms of any contract relating to such Accounts.

M. Borrower possesses all necessary trademarks, trade names, copyrights, patents, patent rights and licenses to conduct its business as now operated, without any known conflict with any trademarks, trade names, copyrights, patents and license rights of any other person or entity.

N. Borrower's legal name as of the date hereof as it appears in its official filing with its state of organization is as set forth in the opening paragraph of this Agreement. Borrower has not organized another entity or Tradename using Borrower's name or Tradename as set forth herein in any other jurisdiction.

O. As to all of Borrower's Inventory and Equipment:

   i. The Inventory and Equipment are currently located only at the locations identified on the Schedule, or such other locations as consented to by Crestmark in writing;

   ii. All Inventory is now and at all times hereafter shall be of good and merchantable quality, free from defects, except as disclosed to Crestmark in writing;

   iii. The Inventory and Equipment are and shall remain free from all liens, claims, encumbrances, and security interests (except as held by Crestmark, and except as identified on the Schedule).

   iv. The Inventory is not now stored with a bailee, warehouseman or similar party unless such party has entered into a waiver letter in form satisfactory to Crestmark.

11. **BORROWER'S PROMISES.** Borrower makes the following promises to Crestmark and these promises are effective until the Obligations are fully paid:

7

**A.** To pay all Obligations when due and perform all terms, conditions and obligations of the Loan Documents.

**B.** To permit Crestmark, or its representatives, access to the Collateral on Borrower's premises and to Borrower's computer systems, books of account and financial records. Borrower will pay the cost of Field Examinations as specified in the Schedule.

**C.** To notify Crestmark promptly of any litigation, administrative or tax proceeding or other action threatened or instituted against Borrower or Guarantor or its property, or of any other material matter which may adversely affect Borrower's financial condition. The amount of claims as to which Borrower must notify Crestmark is specified in the Schedule as the "Borrower Claims Threshold".

**D.** To pay when due all taxes, assessments and governmental charges, provided that Borrower has the right to contest the same as long as it has a cash reserve with Crestmark in an amount as determined by Crestmark in its sole discretion.

**E.** To comply with the Financial Covenants described in the Schedule (if applicable).

**F.** To maintain insurance on its business activities in such amount and in such form as Crestmark may from time to time require, and with respect to such insurance if so designated, Crestmark shall be named as "Lender Loss Payee" and/or "Additional Insured", as applicable, under the policy and receive evidence of the insurance. All insurance which protects Crestmark shall have at least a 30-day notice to Crestmark prior to any cancellation. With respect to the insurance, Borrower appoints Crestmark as its attorney-in-fact, effective upon and after the occurrence of a Default, to negotiate any and all claims under all insurance policies and Crestmark also has the power to negotiate any payments on the insurance policies.

**G.** To comply with all laws, ordinances and regulations or other requirements of any governmental authority or agency applicable to Borrower's business.

**H.** To maintain and preserve all Collateral in good repair, working order and condition, and with respect to accounts, pursue collections thereof.

**I.** To provide Crestmark with evidence of ownership of any Collateral upon the request of Crestmark.

**J.** To maintain a Loan Amount balance which shall not exceed the sum of Eligible Collateral times the corresponding Advance Rate.

**12.** **NEGATIVE COVENANTS.** Borrower agrees until the Obligations are paid in full, it will not:

**A.** Change its state of organization or its name, or move its executive office or at any time adopt any assumed name without giving Crestmark at least 30 days prior written notice.

**B.** Declare or pay any dividend or make any other distribution with regard to its equity or purchase or retire any of its equity without Crestmark's prior written consent,

8

provided if it is taxed as an S Corporation or other "pass through" entity, Borrower may prior to a Default distribute profits to its equity holders in an amount necessary to enable such holders to pay personal, state and federal taxes directly attributable to the profits earned by Borrower for such year.

    C. Obtain any loan or guaranty or assume any obligation or liability, whether as borrower, guarantor, surety, indemnitor or otherwise (a "Borrower Obligation") (i) that would result in or create a Default, or (ii) that together with all other existing Borrower Obligations would exceed the "Borrower Obligation Threshold" set forth in the Schedule, without Crestmark's prior written consent.

    D. Enter into any transaction with its equity holders or any affiliates of Borrower except on terms at least as favorable as would be usual and customary in similar transactions if the person with whom the transaction is entered into was not related to Borrower.

    E. Release, redeem, purchase, or acquire any of its equity interests without the prior written consent of Crestmark.

    F. Default in the payment of any debt to any other person.

    G. Suffer or permit any judgment, decree or order not fully covered by insurance to be entered against Borrower or a Guarantor in an aggregate amount in excess of the "Claims Threshold", or permit or suffer any warrant or attachment to be filed against Borrower, any Guarantor, or against any property or asset of Borrower or Guarantor.

    H. Transfer the ownership of any equity interest in Borrower without the prior written consent of Crestmark which shall not be unreasonably withheld.

    I. Sell any of the Collateral outside the normal course of its business without the prior written consent of Crestmark.

    J. Purchase the stock or assets of any other entity without the prior written consent of Crestmark.

    13.   **FINANCIAL REPORTS.** Borrower promises that until the Obligations are fully paid and this Agreement is terminated, it will keep its books and records in a manner satisfactory to Crestmark and Crestmark will have the right at any time to verify any of the Collateral, documentation or books and records of Borrower in whatever manner and as often as Crestmark deems necessary. Borrower will permit Crestmark, or its representatives, access to the Collateral and Borrower's premises and to Borrower's computer systems, books of account and financial records. Borrower will furnish to Crestmark the financial reports identified on the Schedule, certified to by the president or chief financial officer of Borrower and Borrower's certified public accountant, if applicable. All financial reports will be prepared in accordance with generally acceptable accounting principles and will be true and accurate.

    14.   **CRESTMARK'S REMEDIES.** Crestmark has all the remedies available at law or in equity (including those under the UCC) in the event of a Default or if Borrower fails to pay the Obligations on demand, including but not limited to the following: to charge the Extra Rate;

9

to notify Account Debtors to make the payments directly to Crestmark; to settle or compromise any disputed Account, sue on any Account and make any agreement to deal with the accounts as if it were the owner; to offset any of Borrower's or Guarantor's funds under the control of Crestmark against the Obligations; and to require Borrower to gather up the Collateral and make it available to Crestmark for Crestmark to conduct public or private UCC foreclosure sales. Borrower grants to Crestmark a license or other right to use, without charge, Borrower's labels, patents, copyrights, trademarks, rights of use of any name, trade secrets, tradenames and advertising materials, or any property of a similar nature, as it pertains to the Collateral, in completing production of, advertising for sale and selling any Collateral, and Borrower's rights under all licenses and franchise agreements shall inure to Crestmark's benefit. If Crestmark should proceed against the Collateral and sell any of the Collateral on credit, Borrower will be credited on the Obligations only with the amount actually received by Crestmark and Borrower waives any and all provisions as to notice or a particular method of sale of any of the Collateral. Borrower will pay all expenses in connection with the assembly or sale of the Collateral. Crestmark does not have to incur its own expenses in realizing upon the Collateral, but all the expenses are for the account of Borrower. Borrower recognizes that at no time is Crestmark its agent in dealing with the Collateral, but Crestmark acts only in its own interest.

15. **CUMULATIVE RIGHTS.** Crestmark's rights and remedies under this Agreement and all other agreements shall be cumulative. Crestmark shall have all other rights and remedies not inconsistent herewith as provided under the UCC, by law, or in equity. No exercise by Crestmark of one right or remedy shall be deemed an election, and no waiver by Crestmark of any Default on Borrower's part shall be deemed a continuing waiver. No delay by Crestmark shall constitute a waiver, election or acquiescence by it.

16. **LENDER ACTIONS.** To the extent applicable law may impose duties on Crestmark to exercise remedies in a commercially reasonable manner, Borrower agrees that it is not commercially unreasonable for Crestmark: to fail to exercise remedies against any Collateral or any particular Account Debtor; to proceed against Account Debtors either directly or through collection agencies; to advertise disposition of Collateral through publications or media of general circulation; to hire professional auctioneers to dispose of Collateral; to dispose of Collateral in wholesale or retail markets; to disclaim warranties with respect to Collateral; or to obtain services of attorneys or other professionals. The foregoing is not an exhaustive list and nothing contained in the foregoing shall be construed to grant any rights to Borrower or to impose any duties on Crestmark that would not have been granted or imposed by this Agreement or by applicable law in the absence of this Section 16. Borrower agrees that under no circumstances is Crestmark the agent or representative of Borrower.

17. **APPLICATION OF PROCEEDS.** Once collection efforts are commenced by Crestmark, any proceeds of sale or disposition of Collateral may be applied by Crestmark first to expenses authorized by this Agreement, including Crestmark's reasonable attorneys' fees, which Borrower must pay, and the balance to payment of the Obligations in such manner as Crestmark may elect. Borrower and Guarantor remain liable for any deficiency.

18. **NOTICES.** Any notice is effective by either party if sent in writing or facsimile with confirmation of receipt or by certified mail or personal delivery or expedited mail services to the addresses shown on the Schedule.

10

## 19. MISCELLANEOUS PROVISIONS.

**A.** This Agreement is binding upon and is for the benefit of Borrower and Crestmark, and their respective successors and assigns. However, under no circumstances may Borrower assign this Agreement or its rights and duties hereunder. Crestmark may assign this Agreement and its rights under the Loan Documents and Borrower will make payments to any such assignee if so directed.

**B.** Crestmark has the right at any time to assign, transfer, negotiate or sell participations in this Agreement or the Obligations or the rights of Crestmark hereunder. In connection with any assignment, Borrower consents to disclosure of any and all books, records, files, Loan Documents and all other documents in the possession or under the control of Crestmark.

**C.** No delay or failure of Crestmark in exercising any right or remedy will affect such right or remedy. No delay or failure of Crestmark to demand strict adherence to the terms of this Agreement will be deemed to waive Crestmark's rights to demand such adherence at any time in the future.

**D.** The term "including" means "including, without limitation", and the term "includes" means "includes, without limitation". The word "will" shall be construed to have the same meaning and effect as the word "shall". The definitions of terms in this Agreement shall apply equally to the singular and plural forms of the terms defined.

**E.** This Agreement and the other Loan Documents will be interpreted and determined under the laws of the State of Michigan without any regard to any conflict of laws provisions.

**F.** Borrower, at Crestmark's request, will make, execute and acknowledge any and all further instruments or agreements necessary to carry out the intent of this Agreement and the other Loan Documents.

**G.** This Agreement may be signed in any number of counterparts, each of which shall be an original, with the same effect as if all signatures were upon the same instrument. Delivery of an executed counterpart of the signature page to this Agreement by facsimile or electronic mail shall be effective as delivery of a manually executed counterpart of this Agreement, and any party delivering such an executed counterpart of the signature page to this Agreement by facsimile or electronic mail to any other party shall thereafter also promptly deliver a manually executed counterpart of this Agreement to such other party, provided that the failure to deliver such manually executed counterpart shall not affect the validity, enforceability, or binding effect of this Agreement.

**H.** Neither Crestmark nor its affiliates directors, officers, agents, attorneys or employees are liable to Borrower or Guarantor or affiliates for any action taken or omitted by it or any of them under the Loan Documents except for such liability as may be imposed by law for gross negligence or actual fraud, and no claim shall be made by Borrower or Guarantor or any of Borrower's affiliates, directors, officers, agents, employees for any special or consequential damages or punitive damages arising out of, or related to the Loan Documents or the transactions between the Parties.

11

**I.** This Agreement and the other Loan Documents represent the complete Agreement between the parties with respect to the subject matter of this Agreement, and there are no promises, undertakings, representations or warranties by Crestmark relative to the subject matter of this Agreement not expressly set forth in this Agreement or the other Loan Documents. This Agreement and the other Loan Documents may be amended only in writing.

**J.** If any provision of this Agreement is in conflict with any law or statute or is otherwise unenforceable, then the provision will be deemed null and void only to the extent of such provision and the provision will be deemed severable and the remainder of this Agreement shall be in full force and effect.

**K.** Any payment made to Crestmark by either Borrower or Guarantor which is subsequently invalidated, declared fraudulent or preferential or otherwise set aside under any bankruptcy, state, federal or equitable law, then to the extent of such invalidity such payment will be deemed not to have been made and the obligation will continue in full force and effect. This provision shall survive termination of this Agreement.

**L. No Lien Termination Without Release -** In recognition of among other things, Borrower's indemnification obligations and Crestmark's right to have its attorneys' fees and other expenses incurred in connection with this Agreement secured by the Collateral, notwithstanding payment in full of all Obligations by Borrower, Crestmark shall not be required to record any terminations or satisfactions of any of its liens on the Collateral unless and until Borrower and all guarantors of its Obligations have executed and delivered to Crestmark a general release in a form acceptable to Crestmark in its sole discretion. Borrower understands that this provision constitutes a waiver of its rights Borrower may have under §9-513 of the UCC.

**M. USA Patriot Act Notification –** The following notification is provided to Borrower pursuant to Section 326 of the USA Patriot Act of 2001, 31 U.S.C. Section 5318:

**IMPORTANT INFORMATION ABOUT PROCEDURES FOR OPENING A NEW ACCOUNT.** To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person or entity that opens an account, including any deposit account, treasury management account, loan or other extension of credit. Crestmark may ask for the name, address, date of birth, and other information that will allow us to identify all Borrowers, principals and owners. Crestmark may also ask to see your driver's license or other identifying documents.

**20.** <u>**RESERVED.**</u>

**21.** <u>**INDEMNIFICATION.**</u> Borrower hereby agrees to indemnify, defend and hold Crestmark and its executive committees, parent affiliates, subsidiaries, agents, directors, officers, participants, employees, agents and their successors and assigns (collectively "Indemnified Parties") harmless against any and all liabilities of any kind, nature or description and damages whether they are direct, indirect or consequential, including attorney's fees and other professionals

12

and experts incurred or suffered directly or indirectly by Indemnified Parties or asserted against Indemnified Parties by anyone whosoever, including Borrower or Guarantor, which arise out of the Loan Documents or the relationship and transaction between the Parties. This provision shall survive the termination of this Agreement.

22. **JOINT AND SEVERAL OBLIGATIONS.** If more than one person or entity is named as Borrower in this Agreement, all Obligations, representations, warranties, covenants and indemnities of Borrower set forth herein and in the other Loan Documents shall be the joint and several obligations of such persons and/or entities. Each Borrower hereby appoints each other Borrower as its true and lawful attorney-in-fact, with full right and power, for purposes of exercising all rights of such person under this Agreement and applicable law with regard to the transactions contemplated under this Agreement. The foregoing is a material inducement to the agreement of Crestmark to enter into this Agreement and to consummate the transactions contemplated under this Agreement. Each Borrower represents that all Borrowers are operated as part of one consolidated business entity and are directly dependent upon each other for, and in connection with, their respective business activities and financial resources. Each Borrower will receive a direct economic and financial benefit from the obligations incurred under this Agreement and the incurrence of such obligations is in the best interest of each Borrower.

23. **JURISDICTION.** BORROWER AND GUARANTOR AGREE THAT ANY ACTION TO ENFORCE BORROWER'S OR GUARANTOR'S OBLIGATIONS TO CRESTMARK SHALL BE PROSECUTED EITHER IN THE CIRCUIT COURT OF OAKLAND COUNTY MICHIGAN OR THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN (UNLESS CRESTMARK, IN ITS SOLE DISCRETION, ELECTS SOME OTHER JURISDICTION), AND BORROWER AND GUARANTOR SUBMIT TO THE JURISDICTION OF ANY SUCH COURT SELECTED BY CRESTMARK. BORROWER AND GUARANTOR WAIVE ANY AND ALL RIGHTS TO CONTEST THE JURISDICTION AND VENUE OF ANY ACTION BROUGHT IN THIS MATTER AND BORROWER AND GUARANTOR MAY BRING ANY ACTION AGAINST CRESTMARK ONLY IN THE CIRCUIT COURT FOR THE COUNTY OF OAKLAND OR THE FEDERAL COURT OR THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN.

24. **WAIVER.** ALL PARTIES, INCLUDING BORROWER AND GUARANTOR EACH KNOWINGLY AND VOLUNTARILY WAIVE ANY CONSTITUTIONAL RIGHT TO A TRIAL BY JURY WITH RESPECT TO ANY CLAIM, DISPUTE OR CONFLICT BETWEEN THE PARTIES OR UNDER THE LOAN DOCUMENTS AND AGREE THAT ANY LITIGATION SHALL BE HEARD BY A COURT OF COMPETENT JURISDICTION SITTING WITHOUT A JURY. BORROWER AND GUARANTOR ACKNOWLEDGE THAT THEY HAVE HAD THE OPPORTUNITY TO REVIEW THE EFFECT OF THIS PROVISION WITH COUNSEL OF THEIR CHOICE.

25. **RELEASE.** BORROWER AND GUARANTOR RELEASE AND FOREVER DISCHARGE CRESTMARK, ITS AFFILIATES, OFFICERS, AGENTS, EMPLOYEES AND DIRECTORS FROM ANY AND ALL CLAIMS OF ANY KIND WHATSOEVER FROM THE BEGINNING OF TIME TO DATE OF THIS AGREEMENT.

[SIGNATURE PAGE TO FOLLOW]

13

The parties have executed this Agreement as of the date and year first written above.

**CRESTMARK:**

**CRESTMARK, A DIVISION OF METABANK, NATIONAL ASSOCIATION**

By: _____
Name: _Adam Carley_
Its: _1st Vice President_

**BORROWER:**

**R.B. DWYER CO), INC.,**
a California corporation

By: _____
James B. Dwyer
Its: CEO and President

**IDEAL SLEEVES INTERNATIONAL, LLC,**
a Pennsylvania limited liability company

By:  R.B. Dwyer Holding Co.,
     a Pennsylvania corporation

     By: _____
     James B. Dwyer
     Its: President

**COLOR CRAFT FLEXIBLE PACKAGING, LLC,** a Tennessee limited liability company

By:  R.B. Dwyer Holding Co.,
     a Pennsylvania corporation

     By: _____
     James B. Dwyer
     Its: President

[Signature page 1 of 2 to Loan and Security Agreement]

14

By signing this Agreement, the undersigned Guarantor agrees it has read and understands the Agreement and agrees to all of its terms.

GUARANTOR:

_____
JAMES B. DWYER, individually

**R. B. DWYER GROUP PROPERTIES, LP,**
a Pennsylvania limited partnership

By: R. B. Dwyer Properties, Inc.,
     a Pennsylvania corporation
Its: General Partner

    By: _____
       James B. Dwyer
    Its: CEO and President

[Signature page 2 of 2 to Loan and Security Agreement]

15

## SCHEDULE TO LOAN AND SECURITY AGREEMENT

This Schedule is part of the Loan and Security Agreement dated May 20, 2022 between:

> CRESTMARK, A DIVISION OF METABANK,
> NATIONAL ASSOCIATION ("CRESTMARK")
> 5480 CORPORATE DRIVE
> SUITE 350
> TROY, MICHIGAN 48098

AND

> R.B. DWYER CO., INC.
> 2891 E. MIRALOMA AVE.
> ANAHEIM, CALIFORNIA 92806
>
> IDEAL SLEEVES INTERNATIONAL, LLC
> 152 S. FRANKLIN ST.
> WILKES-BARRE, PENNSYLVANIA 18701
>
> COLOR CRAFT FLEXIBLE PACKAGING, LLC
> 594 DR. M L KING JR. AVE.
> MEMPHIS, TENNESSEE 38126
>
> (INDIVIDUALLY AND COLLECTIVELY, THE "BORROWER")

The following paragraph numbers correspond to paragraph numbers contained in the Agreement.

2. **LOAN; LOAN ADVANCES.**

Advance Formula: Advances of the Loan may be measured against a percentage of Eligible Accounts and Eligible Inventory.

The Loan Amount may not exceed an amount which is the lesser of:

(a) Four Million and 00/100 Dollars ($4,000,000.00) ("Maximum Amount"); and

(b) the sum of:

  (i)   Ninety percent (90.0%) of Eligible Accounts PLUS

  (ii)  the lesser of One Million Two Hundred Fifty Thousand and 00/100 Dollars ($1,250,000.00) and Fifty percent (50%) of Eligible Inventory and Sixty-Five percent (65%) of (i) above; provided that, in no event shall the amount advanced against or attributable to Eligible Inventory consisting of pre-printed finished labels exceed Seven Hundred Thousand and 00/100 Dollars ($700,000.00).

(subparagraphs (i) – (ii) are collectively the "Advance Formula").

Crestmark in its sole discretion may increase or reduce any percentage advance rate with respect to the Advance Formula.

**Eligible Accounts** means and includes those Accounts which:

  (i)    have been validly assigned to Crestmark;
  (ii)   strictly comply with all of Borrower's promises, warranties and representations to Crestmark;
  (iii)  contain payment terms of not greater than ninety (90) days from the date of invoice, with the exception of Unilever USA which is one hundred and twenty (120) days from the date of invoice;
  (iv)  are not more than ninety (90) days past the date of invoice, with the exception of Unilever USA which is one hundred and thirty-five (135) days from the date of invoice; and
  (v)   are invoiced not later than ten (10) days from the date of service or sale.

Eligible Accounts shall not include the following:

  (a)   Accounts with respect to which the Account Debtor is an officer, employee or agent of Borrower;
  (b)   Accounts with respect to which services or goods are placed on consignment, guaranteed sale, or other terms by reason of which the payment by the Account Debtor may be conditional;
  (c)   Accounts with respect to which the Account Debtor is not a resident of the United States or Canada; provided, however, all Accounts originating from the Province of Quebec shall be deemed ineligible;
  (d)   Accounts with respect to which the Account Debtor is the United States or any department, agency or instrumentality of the United States; provided, however, that an Account shall not be deemed ineligible by reason of this clause (d) if the Borrower has completed all of the steps necessary, in the sole opinion of Crestmark, to comply with the Federal Assignment of Claims Act of 1940 (31 U.S.C. Section 3727) with respect to such Account;
  (e)   Accounts with respect to which the Account Debtor is any state of the United States or any city, town, municipality, county or division thereof;
  (f)   Accounts with respect to which the Account Debtor is a subsidiary of, related to, affiliated with, or has common shareholders, officers or directors with Borrower;
  (g)   Accounts with respect to which Borrower is or becomes liable to the Account Debtor for goods sold or services rendered by the Account Debtor to Borrower;
  (h)   those Accounts where Crestmark has notified Borrower that, in Crestmark's sole discretion, the Account or Account Debtor is not acceptable to Crestmark;
  (i)   all of the Accounts owed by an Account Debtor who is the subject of a bankruptcy, receivership or similar proceeding;
  (j)   all of the Accounts owed by an Account Debtor where twenty-five (25%) percent or more of all of the Accounts owed by that Account Debtor are more than ninety (90) days from

2

the invoice date, with the exception of Unilever USA which is one hundred and thirty-five (135) days from the date of invoice;

(k) Accounts for which the services have not yet been rendered to the Account Debtor or the goods sold have not yet been delivered to the Account Debtor (commonly referred to as "pre-billed accounts");

(l) COD, credit card sales and cash sales;

(m) Accounts that are disputed; and

(n) Any contra or affiliate contra Accounts.

"**Eligible Inventory**" means and includes that Inventory (other than packaging materials, chemicals, additives, promotional items, labels and supplies) which Crestmark, in its sole credit judgment, deems to be Eligible Inventory. Without limiting the generality of the foregoing, no Inventory shall be Eligible Inventory unless:

(i) it is finished goods or raw materials;

(ii) at all times it strictly complies with all of Borrower's promises, warranties and representations to Crestmark;

(iii) it is in good, new and salable condition;

(iv) it is not obsolete or unmerchantable, in Crestmark's sole and absolute discretion;

(v) it meets all standards imposed by any governmental agency or authority or any insurer;

(vi) it is at all times subject to Crestmark's duly perfected, first priority security interest and there exists no other lien or encumbrance other than as permitted hereunder; and

(vii) it is in Borrower's possession and control situated at a location in compliance with this Agreement.

Eligible Inventory shall not include Inventory that:

(a) is in the hands of any third party, including a warehouseman, consignee, etc., unless Crestmark shall have received a warehouseman's waiver or a third-party processor's waiver from such warehouseman, finisher, consignee, etc.;

(b) is subject to any license or other agreement that limits, conditions, or restricts Borrower's or Crestmark's right to sell or otherwise dispose of such Inventory;

(c) is slow moving, meaning that it is on hand and has not turned within twelve (12) months; provided that this determination of "slow moving" may be updated in Crestmark's sole and absolute discretion;

(d) is of a type that Crestmark, in its commercially reasonable discretion, has determined is not Eligible Inventory; or

(e) is not in Borrower's possession based upon consignment, guaranteed sale, or other terms by reason of which the payment by Borrower may be conditional.

Crestmark will determine in its sole discretion whether any Collateral is eligible for an Advance, but no Collateral will be considered eligible unless the requirements set forth above are met. Regardless of whether any Collateral is eligible, it is still part of the Collateral securing the Obligations.

3

Borrower will provide a Borrowing Base Certificate in the form approved by Crestmark in its sole discretion before each Advance is made, but not less than once per week. In addition, prior to any request for an Advance, upon request by Crestmark, Borrower must furnish to Crestmark invoices, credit memos, sales and cash receipt journals, purchase orders, bills of lading, evidence of delivery, proof of shipment, timesheets or any other documents Crestmark requests, in its sole discretion, with respect to the Collateral to support the Advance. Crestmark will endeavor to provide the requested funds by the end of the same business day that it receives the request so long as the complete package of information for the request has been received by 10:30 a.m. Eastern Time that day. All requests for funding will be subject to Crestmark's then standard fees for electronic funds transfer, wire transfers and check services.

Each time an Advance is made, the amount of the Obligations will be increased by the amount of the Advance. One (1) business day ("Clearance Day") after checks, ACH or wire transfers or other credit instruments are deposited in the Lockbox Account, Crestmark will credit the Loan Account with the net amount actually received, whereupon interest and the Maintenance Fee will no longer be charged. On the date a Borrowing Base Certificate is received on the net funds actually received, Borrower will receive immediate credit on such funds in determining availability for Advances.

4. **FEES AND EXPENSES.** The following fees will be paid by Borrower:

**Loan Fee:** At closing of the Loan and on each one-year anniversary of the date of the Agreement, Borrower will pay Crestmark a loan fee in the aggregate amount of one half of one percent (0.5%) of the Maximum Amount, which will be fully earned as of such date and not refundable in any event. Notwithstanding the foregoing, Borrower shall have the option to pay such Loan Fee in twelve (12) equal consecutive monthly payments commencing on date of execution of this Agreement (and, with respect to each year starting with the one-year anniversary, the first day of each one-year anniversary) and continuing on the first day of each month thereafter.

**Late Reporting Fee:** Borrower will pay Crestmark a Late Reporting Fee in an amount equal to One Hundred Fifty ($150.00) Dollars per document per business day for any day in which any report, financial statement or schedule required by the Agreement is delivered late.

**Lockbox Fee:** Each month Borrower will pay all costs in connection with the Lockbox and the Lockbox Account, as determined by Crestmark from time to time.

**Documentation Fee:** In consideration of the extension of the Loan and the execution of this Agreement, Borrower will pay Crestmark a documentation fee of $1,000.00, which fee is fully earned as of the date hereof and is non-refundable.

**Maintenance Fee:** Waived.

**Exit Fee:** Borrower may elect to prepay the Obligations and/or terminate this Agreement during the first 2 years following the date of this Agreement, but only upon the payment of all Obligations including the following exit fee ("Exit Fee"), as liquidated damages and not as a penalty: prior to the second year anniversary date of the Agreement, the exit fee will be two percent (2.00%) of the Maximum Amount, together with all unpaid Loan Fees and Maintenance Fees due under the Agreement. No partial prepayment will affect the Borrower's obligation to continue the

4

regular payments due under the Note. In the event that a Default has occurred and is continuing at the time Crestmark demands payment of the Obligations, the Exit Fee will be due and payable by Borrower.

The Exit Fee shall automatically renew on each anniversary date beginning on the 2nd anniversary date of this Agreement for an additional twelve (12) month period unless (i) Borrower notifies Crestmark in writing within sixty (60) days before such anniversary date of Borrower's intention to terminate the Agreement and (ii) the Obligations are paid in full by such anniversary date.

**Minimum Loan Balance**. Borrower shall maintain an average outstanding principal balance of the Loan for each month in the amount of One Million Five Hundred Thousand and 00/100 Dollars ($1,500,000.00) ("Minimum Loan Balance"). If the actual average outstanding principal balance of the Loan in any month is less than the Minimum Loan Balance, Borrower must pay interest and Maintenance Fees for such month calculated on the Minimum Loan Balance.

5.    **LOCKBOX**.

The Lockbox Account means:

> For R.B. Dwyer Co., Inc.:
> Drawer # 2835
> PO Box 5935
> Troy, MI 48007-5935
>
> For Ideal Sleeves International, LLC:
> Drawer # 2836
> PO Box 5935
> Troy, MI 48007-5935
>
> For Color Craft Flexible Packaging, LLC:
> Drawer # 2837
> PO Box 5935
> Troy, MI 48007-5935

5

10. **REPRESENTATIONS.**

    (A)   R.B. Dwyer Co., Inc. is a California corporation; Ideal Sleeves International, LLC is a Pennsylvania limited liability company; and Color Craft Flexible Packaging, LLC is a Tennessee limited liability company.

    (C)   List pending and threatened litigation and unsatisfied judgments: None

    (F)   List Security Interests in the Collateral held by creditors other than Crestmark as Permitted Encumbrances:

Liens held by the Secured Party(ies) named below against R.B. Dwyer Co., Inc., as reflected by the following financing statements filed with the California Secretary of State:

- UCC financing statement bearing file number # 15-7472685429 filed on July 1, 2015 by Secured Party, Hewlett-Packard Financial Services Company;
- UCC financing statement bearing file number # 18-7626168499 filed on January 8, 2018 by Secured Party, Raymond Leasing Corporation;
- UCC financing statement bearing file number # 18-7642970711 filed on April 11, 2018 by Secured Party, De Lage Landen Financial Services, Inc.;
- UCC financing statement bearing file number # 19-7729701104 filed on August 26, 2019 by Secured Party, ENGS Commercial Finance Co.; and
- UCC financing statement bearing file number #U200011825821 filed on August 14, 2020 by Secured Party, U.S. Small Business Administration, subject to a Subordination Agreement, in form and substance satisfactory to Crestmark.

Liens held by the Secured Party(ies) named below against Ideal Sleeves International, LLC, as reflected by the following financing statements filed with the Pennsylvania Secretary of State:

- UCC financing statement bearing file number # 2017050500699 filed on May 5, 2017 by Secured Party, NBT Bank, National Association;
- UCC financing statement bearing file number # 2018021200872 filed on February 12, 2018 by Secured Party, NBT Bank, NA, subject to a Subordination Agreement, in form and substance satisfactory to Crestmark; and
- UCC financing statement bearing file number # 2020081402132 filed on August 14, 2020 by Secured Party, U.S. Small Business Administration, subject to a Subordination Agreement, in form and substance satisfactory to Crestmark.

Liens held by the Secured Party(ies) named below against Color Craft Flexible Packaging, LLC, as reflected by the following financing statements filed with the Tennessee Secretary of State:

6

- UCC financing statement bearing file number # 426291476 filed on January 31, 2017 by Secured Party, Guaranty Bank and Trust Company, subject to a Subordination Agreement, in form and substance satisfactory to Crestmark; and
- UCC financing statement bearing file number # 433132907 filed on August 14, 2020 by Secured Party, U.S. Small Business Administration, subject to a Subordination Agreement, in form and substance satisfactory to Crestmark.

NOTE: The listing of the interests noted above shall not, in any manner whatsoever, be deemed to be an acknowledgement by Crestmark as to the perfection, priority, validity or enforceability thereof.

(J)    List Borrower's Trade names: None

## 11.    BORROWER'S PROMISES:

C.    BORROWER CLAIMS THRESHOLD:    $75,000.00.

E.    FINANCIAL COVENANTS:  Borrower will maintain the following Financial Covenants, which will be tested on a quarterly basis:

1.    For each quarterly period, a **Debt Service Coverage Ratio** of not less than (i) 0.40 for the quarter ended June 30, 2022, (ii) 0.6 for the quarter ended September 30, 2022, (iii) 0.75  for the quarter ended December 31, 2022, and (iv) 0.85 for the quarter ended March 31, 2023, and (v) 1.0 for each quarter thereafter.  The Debt Service Coverage Ratio will be calculated on a building trailing twelve-month basis from the month ending April 30, 2022 to the end of each applicable quarter being tested and building to a trailing twelve-month basis.  Once the calculation has built to a trailing twelve-month basis, the Debt Service Coverage Ratio will continue to be calculated on a trailing twelve-month basis for each testing period thereafter. "Debt Service Coverage Ratio" shall mean as of the date of determination, the ratio determined by a fraction, the numerator of which is the sum of Borrower's net income, plus, without duplication and to the extent deducted in determining such net income, (i) interest expense, (ii) income tax expense, and (iii) depreciation and amortization expense, and the denominator of which is the sum of required principal and interest expense for all debt obligations.

In addition, at no time shall Borrower make any loans, advances, intercompany transfers or cash flow, between Borrower and any subsidiary, related entity or affiliate of Borrower or with any company that has common shareholders, officers or directors with Borrower.

All of the financial covenants in this Agreement shall be determined in accordance with GAAP, unless otherwise provided.

"GAAP" means generally accepted accounting principles set forth in the opinions and pronouncements of the Accounting Principles Board of the American Institute of Certified Public

7

Accountants and statements and pronouncements of the Financial Accounting Standards Board that are applicable to the circumstances as of the date of determination and applied on a consistent basis.

    F.    REQUIRED INSURANCE.  Without limiting Crestmark's requirement for insurance coverage, which may change from time to time, the following is/are the minimum insurance requirements:

        Property Damage: "Crestmark, a division of MetaBank, N.A. ISAOA" named as Lender Loss Payee

        General and Professional Liability: "Crestmark, a division of MetaBank, N.A. ISAOA" named as Additional Insured for an amount not less than the smallest amount required under any contract with any Account Debtor.

**12.**    C.    BORROWER OBLIGATION THRESHOLD: $75,000.00.

**13.**    <u>**FINANCIAL REPORTS.**</u>

    <u>**Management Prepared Financial Statements**</u>:  Borrower will deliver to Crestmark monthly management prepared financial statements, balance sheets, and profit and loss statements for the month then ended, certified to by the president or chief financial officer of Borrower. Such reports will set forth the financial affairs and true condition of Borrower for such time period and will be delivered to Crestmark no later than thirty (30) days after the end of each month.

    <u>**Projections:**</u>  Upon request, Borrower shall deliver to Crestmark, an annual financial projection including balance sheet, income statements, and statement of cash flows together with assumptions for the following year, broken down monthly.

    <u>**Guarantors' Personal Financial Statements**</u>:  Upon request, Guarantors will provide Crestmark with annual personal financial statements on forms supplied by Crestmark. Such reports will set forth with detail Guarantors' financial affairs and the true financial condition of Guarantors, as of the end of each calendar year and shall be delivered to Crestmark on the earlier of April 30th or 120 days after the end of each calendar year.

    <u>**Annual Financial Statements**</u>:  Each year Borrower will deliver to Crestmark annual management prepared financial statements, cash flow statements, balance sheets, and profit and loss statements , all without exceptions. Such reports will set forth in detail Borrower's true condition as of the end of Borrower's fiscal year no later than one hundred twenty (120) days after the end of Borrower's fiscal years.

    <u>**Covenant Compliance Certificate**</u>.  Borrower will deliver to Crestmark a [quarterly] management-prepared covenant compliance certificate in the form provided to Borrower by Crestmark, certified by the president or chief financial officer of the Borrower. The covenant compliance certificate shall be delivered to Crestmark no later than thirty (30) days following the end of each fiscal quarter.

All financial statements are and will be prepared in accordance with GAAP applied on a consistent basis.

**Accounts Receivable, Accounts Payable Aging, Inventory Reports and Borrowing Base Certificate:** Borrower will furnish to Crestmark the following certified to by the president or chief financial officer of Borrower within the time periods set forth:

(a) **Accounts Receivable Reports:** Monthly detailed Accounts Receivable Aging Reports no later than fifteen (15) days after the end of each month, but may be requested more frequently by Crestmark;

(b) **Accounts Payable Reports:** Monthly summary Accounts Payable Aging Reports no later than fifteen (15) days after the end of each month;

(c) **Inventory Reports:** Monthly Inventory certification reports no later than fifteen (15) days after the end of each month. The certification must list Inventory by category and location as of month end; and

(d) **Borrowing Base Certificate:** With each Advance request but not less than weekly, borrowing base certificates together with all such documentation as required by Crestmark.

**Tax Returns:** Upon request, Guarantor and Borrower will each provide Crestmark with current annual tax returns prior to April 15 of each year or if an extension is filed, at the earlier of (a) filing, or (b) the extension deadline.

**Field Examinations:** Borrower will reimburse Crestmark for the costs to perform three (3) field examinations per year of Borrower's books and records, assets and liabilities, to be performed by Crestmark's inspector, whether a Crestmark officer or an independent party with all expenses, (whether for a Crestmark employee or otherwise), including all out of pocket expenses including, but not limited to, transportation, hotel, parking, and meals paid by Borrower. Upon Default, the number of field examinations to be reimbursed by Borrower may be increased in Crestmark's sole discretion. Field examinations are performed for Crestmark's internal use and Crestmark has no obligation to provide Borrower or Guarantor with the results of the examination or copies of any reports or work papers in whole or in part.

**Tax Deposit Evidence:** Upon request, submit weekly payroll summaries and evidence of tax payments together with copies of bank statements from which the funds are impounded.

**Customer Lists:** Upon Crestmark's request, Borrower will deliver to Crestmark detailed customer lists showing the customer's name, address, phone number and any other information Crestmark reasonably requests.

**Other Information:** Borrower and Guarantor will also deliver to Crestmark such other financial statements, financial reports, documentation, tax returns and other information as Crestmark requests from time to time.

9

18. **NOTICES.** Addresses for Notices are as set forth at the beginning of this Schedule.

[signatures on following page]

10

"BORROWER"

"CRESTMARK"

**R.B. DWYER CO., INC.,**
a California corporation

**CRESTMARK, A DIVISION OF METABANK, NATIONAL ASSOCIATION**

By: _____
James B. Dwyer

Its: CEO and President

By: _____
Name: _____ Adam Copley
Its: _____ 1st Vice President

**IDEAL SLEEVES INTERNATIONAL, LLC,** a Pennsylvania limited liability company

By: R. B. Dwyer Holding Co.,
a Pennsylvania corporation

Its: Manager

By: _____
James B. Dwyer

Its: President

**COLOR CRAFT FLEXIBLE PACKAGING, LLC,** a Tennessee limited liability company

By: R. B. Dwyer Holding Co.,
a Pennsylvania corporation

Its: Manager

By: _____
James B. Dwyer

Its: President

11