# EXHIBIT A

# FORBEARANCE AGREEMENT

THIS FORBEARANCE AGREEMENT (the "Agreement") is made as of the ⟨4⟩ day of January, 2023 (the "Effective Date"), by and between **PATHWARD, NATIONAL ASSOCIATION** ("Pathward"), fka Crestmark, a division of MetaBank, National Association, **R.B. DWYER CO., INC.**, a California corporation, **IDEAL SLEEVES INTERNATIONAL, LLC,** a Pennsylvania limited liability company and **COLOR CRAFT FLEXIBLE PACKAGING, LLC,** a Tennessee limited liability company (individually and collectively, the "Borrower"), and **R. B. DWYER GROUP PROPERTIES, LP,** a Pennsylvania limited partnership ("R. B. Dwyer Group"), **R. B. DWYER HOLDING CO.,** a Pennsylvania corporation ("R. B. Dwyer Holding"), and **JAMES B. DWYER**, individually ("Dwyer" and together with R. B. Dwyer Group and R. B. Dwyer Holding, the "Guarantor").

## RECITALS:

A.  Borrower and Pathward entered into that certain Loan and Security Agreement dated as of May 20, 2022 (as amended, the "Loan Agreement") pursuant to which Pathward agreed to make Advances to Borrower up to a Maximum Amount of $4,000,000.00 (the "Loan"), which Loan is evidenced by, among other documents, that certain Promissory Note dated May 20, 2022 (the "Note").

B.  Dwyer executed a Personal Guaranty dated May 20, 2022 (the "Personal Guaranty") and R. B. Dwyer Group and R. B. Dwyer Holding each executed a Guaranty dated May 20, 2022 and November 8, 2022, respectively (collectively, the "Corporate Guaranty" and together with the Personal Guaranty, the "Guaranty").

C.  The Loan Agreement, the Note, the Guaranty and all other documents executed in connection with the Loan shall be known collectively as the "Loan Documents". Unless defined herein, all capitalized terms used herein shall have the meaning set forth in the Loan Documents.

D.  Borrower is in default under the Loan Documents because Borrower failed to (i) immediately pay the portion of the Loan Amount that exceeds the Advance Formula, as required by Section 2.E. of the Loan Agreement, and (ii) timely pay all taxes when due as required under Section 11.D. of the Loan Agreement, each in direct violation of the Loan Agreement (the "Existing Defaults"). Pathward notified Borrower and Guarantor of the Existing Defaults in the Notice of Default dated December 22, 2022 (the "Notice of Default").

E.  Additionally, Pathward notified Borrower and Guarantor in the Notice of Default that the interest rate on the Obligations increased to the Extra Rate (as defined in the Note) effective December 22, 2022.

F.  Notwithstanding the foregoing and without any obligation to do so and without waiving or relinquishing any rights or remedies, Pathward agrees to forbear from collection action under the Loan Documents and applicable law until the Termination Date (as defined herein), provided there is no Forbearance Event of Default (as defined below) and subject to Borrower's and Guarantor's compliance with the requirements and conditions set forth herein.

NOW, THEREFORE, in consideration of the premises and the mutual covenants and agreements, the parties agree as follows:

1.  <u>Governing Provisions.</u> The future administration of Borrower's and Guarantor's obligations to Pathward shall continue to be governed by the covenants, terms and conditions of the Loan Documents, except to the extent superseded, amended, modified or supplemented by this Agreement.

2.  <u>Indebtedness:</u> All amounts due from Borrower to Pathward, whether now or in the future, under the Loan Documents shall be known in the aggregate as the "Indebtedness". The Indebtedness as of December 31, 2022 is $2,702,503.76, exclusive of any accrued and unpaid interest, all fees (including, without limitation,

any exit fee), and any reasonable costs, expenses and reasonable attorneys' fees which Pathward has incurred, and for which the Loan Documents provide that Borrower is responsible.

3. **Acknowledgment of the Indebtedness, Existing Defaults, Recitals and Enforceability of Loan Documents.** Borrower and Guarantor each acknowledge and agree:

  A. To the amount, validity and enforceability of the Indebtedness;
  B. To the validity and enforceability of the Loan Documents;
  C. To the existence of the Existing Defaults; and
  D. That the Recitals herein are true and correct.

4. **Forbearance Event of Default.** A "Forbearance Event of Default" shall exist if any one or more of the following events shall hereafter occur:

  A. Any breach of or default of performance of any of the terms, conditions, warranties or representations set forth in this Agreement;

  B. Pathward in good faith deems itself insecure with respect to the prospect of payment and satisfaction of the obligations under the Loan Documents, the performance of or observance of the covenants set forth in the Loan Documents, or the value of its Collateral;

  C. Borrower's financial performance further materially deteriorates, as determined by Pathward; and

  D. The occurrence of any default as set forth in the Loan Documents, except as otherwise identified above or modified herein.

5. **Forbearance Terms:** Pathward agrees to temporarily forbear from exercising its rights under the Loan Documents until the Termination Date; **provided, however,** that on or before the Termination Date, Borrower and/or Guarantor shall make full and irrevocable repayment of the Loan and all Indebtedness then outstanding thereunder to Pathward by replacement financing from another lender or otherwise.

6. **Discretionary Funding:** Borrower and Guarantor acknowledge that the Loan Documents provide for a discretionary lending arrangement and agree that Pathward has no obligation to lend against any Eligible Account or Eligible Inventory, or to make any further Advances to Borrower, and that any future Advances made by Pathward will not be deemed to be a waiver of the Existing Defaults or any other events of default.

Provided that there is no Forbearance Event of Default, Pathward may make Advances in Pathward's sole discretion in accordance with the revised Advance Formula described below which replaces the Advance Formula in the Loan Agreement and Schedule to Loan and Security Agreement thereto:

  Advance Formula: Advances of the Loan may be measured against a percentage of Eligible Accounts and Eligible Inventory.

  The Loan Amount may not exceed an amount which is the lesser of:

  (a) Four Million and 00/100 Dollars ($4,000,000.00) ("Maximum Amount"); and

  (b) the sum of:

2

(i)  Ninety percent (90.0%) of Eligible Accounts,; PLUS

(ii) the lesser of (x) One Million and 00/100 Dollars ($1,000,000.00), which shall reduce by $50,000.00 on February 1, 2023, followed by weekly reductions of $25,000.00 starting with the first weekly reduction beginning on February 8, 2023 and each week thereafter until it reaches $0.00 where it shall remain, (y) Fifty percent (50%) of Eligible Inventory, and (z) Sixty-Five percent (65%) of (i) above; provided that, in no event shall the amount advanced against or attributable to Eligible Inventory consisting of pre-printed finished labels exceed Seven Hundred Thousand and 00/100 Dollars ($700,000.00).

(subparagraphs (i) – (ii) are collectively the "Advance Formula").

Pathward in its sole discretion may increase or reduce any percentage advance rate with respect to the Advance Formula.

7. Extra Rate: As stated in the Notice of Default, effective as of December 22, 2022, Pathward shall charge the "Extra Rate", which shall be equal to the Effective Rate plus two percent (2.00%) per annum. Pathward reserves the right in its sole discretion to increase the Extra Rate in the future up to the full amount provided.

8. Waiver and Release of All Claims and Defenses. In consideration of Pathward executing this Agreement, Borrower and Guarantor do each hereby release and discharge Pathward of and from any and all claims, harm, causes of action, liabilities, injuries, expenses (including attorneys' fees) and damages of any and every kind, known or unknown, legal or equitable, which Borrower or Guarantor have against Pathward from the date of Borrower's and Guarantor's first contact with Pathward up to the date of this Agreement. Borrower and Guarantor confirm to Pathward that they have reviewed the effect of this release with legal counsel of their choice, or have been afforded the opportunity to do so, prior to the execution of this Agreement and each acknowledges and agrees that Pathward is relying upon this release in executing this Agreement.

9. Termination Date. The Termination Date shall be the earliest of (a) the date that a Forbearance Event of Default occurs, or (b) one hundred twenty (120) days after the date of the Agreement.

10. Guaranty Agreement. As a specific inducement to Pathward, and in consideration of Pathward's reliance hereon, Guarantor hereby acknowledges and agrees to the terms and conditions of this Agreement and reaffirms its Guaranty.

11. Forbearance Fee and Expenses. In consideration of the forbearance offered under the terms set forth herein, Borrower will pay Pathward a Forbearance Fee in the amount of $2,000.00, which is fully earned upon execution of the Agreement. Pathward shall charge the Forbearance Fee against the Loan and such Forbearance Fee shall be non-refundable. Further, Borrower and Guarantor shall pay Pathward on demand all of Pathward's reasonable out-of-pocket expenses, including but not limited to, its reasonable attorney's fees.

12. Additional Documents. Borrower and Guarantor shall execute any and all additional documents requested by Pathward to evidence or effectuate the financial arrangements contemplated herein or contemplated in the Loan Documents.

13. <u>No Waiver or Promise.</u> Notwithstanding Pathward's expression of willingness to discuss the possibility of forbearance on the terms and conditions stated herein, no written or verbal communication or action by Pathward is, nor should it be construed as, a waiver of any defaults, claims, rights or remedies, or as a promise, agreement or representation of any kind, express or implied, on the part of Pathward to make other financial accommodations, or to forbear, postpone or refrain from taking any action with respect to the Loan Documents except as provided for in this Agreement. Borrower and Guarantor acknowledge, understand and agree that Pathward is under no duty or obligation of any kind whatsoever to extend or grant them any further period of forbearance, and no representations have been made to Borrower or Guarantor regarding any likelihood that any extension or continued forbearance will be granted.

14. <u>Counterparts</u>. This Agreement may be executed in any number of counterparts, each of which shall be deemed to be one and the same instrument.

[SIGNATURE PAGE TO FOLLOW]

IN WITNESS WHEREOF, the parties have executed this Forbearance Agreement effective as of the date first stated above.

"PATHWARD"

**PATHWARD, NATIONAL ASSOCIATION**

By: *(signature)*
Name: Susan Michael
Its: First Vice President

"BORROWER"

**R. B. DWYER CO., INC.,**
a California corporation

By: *(signature)*
James B. Dwyer
Its: CEO and President

**IDEAL SLEEVES INTERNATIONAL, LLC,**
a Pennsylvania limited liability company

By: R. B. Dwyer Holding Co.,
a Pennsylvania corporation
Its: Manager

By: *(signature)*
James B. Dwyer
Its: President

**COLOR CRAFT FLEXIBLE PACKAGING, LLC,** a Tennessee limited liability company

By: R. B. Dwyer Holding Co.,
a Pennsylvania corporation
Its: Manager

By: *(signature)*
James B. Dwyer
Its: President

[Signature Page 1 of 2 to Forbearance Agreement]

5

"GUARANTOR"

**R. B. DWYER GROUP PROPERTIES, LP,**
a Pennsylvania limited partnership

By:    R. B. Dwyer Properties, Inc.,
        a Pennsylvania corporation
Its:    General Partner

       By: _____
              James B. Dwyer
       Its:    President

**R. B. DWYER HOLDING CO.,**
a Pennsylvania corporation

By: _____
      James B. Dwyer
Its:    President

_____
**JAMES B. DWYER**, individually

[Signature Page 2 of 2 to Forbearance Agreement]



# AMENDED AND RESTATED FORBEARANCE AGREEMENT

THIS AMENDED AND RESTATED FORBEARANCE AGREEMENT (the "Agreement") is made as of the _4TH_ day of May, 2023 (the "Effective Date"), by and between **PATHWARD, NATIONAL ASSOCIATION** ("Pathward"), fka Crestmark, a division of MetaBank, National Association, **R.B. DWYER CO., INC.**, a California corporation, **IDEAL SLEEVES INTERNATIONAL, LLC**, a Pennsylvania limited liability company and **COLOR CRAFT FLEXIBLE PACKAGING, LLC**, a Tennessee limited liability company (individually and collectively, the "Borrower"), and **R. B. DWYER GROUP PROPERTIES, LP**, a Pennsylvania limited partnership ("R. B. Dwyer Group"), **R. B. DWYER HOLDING CO.**, a Pennsylvania corporation ("R. B. Dwyer Holding"), and **JAMES B. DWYER**, individually ("Dwyer" and together with R. B. Dwyer Group and R. B. Dwyer Holding, the "Guarantor"). This Agreement amends and restates in its entirety the Forbearance Agreement (as defined below).

## RECITALS:

A. Borrower and Pathward entered into that certain Loan and Security Agreement dated as of May 20, 2022 (as amended, the "Loan Agreement") pursuant to which Pathward agreed to make Advances to Borrower up to a Maximum Amount of $4,000,000.00 (the "Loan"), which Loan is evidenced by, among other documents, that certain Promissory Note dated May 20, 2022 (the "Note").

B. Dwyer executed a Personal Guaranty dated May 20, 2022 (the "Personal Guaranty") and R. B. Dwyer Group and R. B. Dwyer Holding each executed a Guaranty dated May 20, 2022 and November 8, 2022, respectively (collectively, the "Corporate Guaranty" and together with the Personal Guaranty, the "Guaranty").

C. The Loan Agreement, the Note, the Guaranty and all other documents executed in connection with the Loan shall be known collectively as the "Loan Documents". Unless defined herein, all capitalized terms used herein shall have the meaning set forth in the Loan Documents.

D. Borrower is in default under the Loan Documents because Borrower failed to (i) immediately pay the portion of the Loan Amount that exceeds the Advance Formula, as required by Section 2.E. of the Loan Agreement, and (ii) timely pay all taxes when due as required under Section 11.D. of the Loan Agreement, each in direct violation of the Loan Agreement (the "Existing Defaults"). Pathward notified Borrower and Guarantor of the Existing Defaults in the Notice of Default dated December 22, 2022 (the "Notice of Default").

E. Additionally, Pathward notified Borrower and Guarantor in the Notice of Default that the interest rate on the Obligations increased to the Extra Rate (as defined in the Note) effective December 22, 2022.

F. Pathward, Borrower and Guarantor entered into a Forbearance Agreement dated January 4, 2023 (the "Forbearance Agreement").

G. Borrower, Ideal Sleeves International, Inc. has advised Pathward that it will no longer be operating after June 2023 and will be relocating some of the inventory, machines and equipment to R.B. Dwyer's Anaheim, CA and Memphis, TN locations (the "Moved M&E), while the remaining machinery and equipment will be auctioned off (the "Auctioned M&E").

H. Borrower, Ideal Sleeves International, LLC and Pathward have entered into a Commission Sale Agreement with Winternitz International, LLC dated April 7, 2023 for the sale at auction of the Auctioned M&E on or around May 11, 2023, with all proceeds received therefrom being delivered directly to Pathward (the "Auction Proceeds").

I. Notwithstanding the foregoing and without any obligation to do so and without waiving or relinquishing any rights or remedies, Pathward agrees to forbear from collection action under the Loan Documents and applicable law until the Termination Date (as defined herein), provided there is no Forbearance Event of Default (as defined below) and subject to Borrower's and Guarantor's compliance with the requirements and conditions set forth herein.

NOW, THEREFORE, in consideration of the premises and the mutual covenants and agreements, the parties agree as follows:

1. <u>Governing Provisions.</u> The future administration of Borrower's and Guarantor's obligations to Pathward shall continue to be governed by the covenants, terms and conditions of the Loan Documents, except to the extent superseded, amended, modified or supplemented by this Agreement.

2. <u>Indebtedness:</u> All amounts due from Borrower to Pathward, whether now or in the future, under the Loan Documents shall be known in the aggregate as the "Indebtedness". The Indebtedness as of April 25, 2023 is $2,671,507.25, exclusive of any accrued and unpaid interest, all fees (including, without limitation, any exit fee), and any reasonable costs, expenses and reasonable attorneys' fees which Pathward has incurred, and for which the Loan Documents provide that Borrower is responsible.

3. <u>Acknowledgment of the Indebtedness, Existing Defaults, Recitals and Enforceability of Loan Documents.</u> Borrower and Guarantor each acknowledge and agree:

   A. To the amount, validity and enforceability of the Indebtedness;
   B. To the validity and enforceability of the Loan Documents;
   C. To the existence of the Existing Defaults; and
   D. That the Recitals herein are true and correct.

4. <u>Forbearance Event of Default.</u> A "Forbearance Event of Default" shall exist if any one or more of the following events shall hereafter occur:

   A. Any breach of or default of performance of any of the terms, conditions, warranties or representations set forth in this Agreement;

   B. Pathward in good faith deems itself insecure with respect to the prospect of payment and satisfaction of the obligations under the Loan Documents, the performance of or observance of the covenants set forth in the Loan Documents, or the value of its Collateral;

   C. Borrower's financial performance further materially deteriorates, as determined by Pathward; and

   D. The occurrence of any default as set forth in the Loan Documents, except as otherwise identified above or modified herein.

5. <u>Forbearance Terms:</u> Pathward agrees to temporarily forbear from exercising its rights under the Loan Documents until the Termination Date; <u>provided, however,</u> that on or before the Termination Date, Borrower and/or Guarantor shall make full and irrevocable repayment of the Loan and all Indebtedness then outstanding thereunder to Pathward by replacement financing from another lender or otherwise. .

6. <u>Discretionary Funding:</u> Borrower and Guarantor acknowledge that the Loan Documents provide for a discretionary lending arrangement and agree that Pathward has no obligation to lend against any Eligible Account or Eligible Inventory, or to make any further Advances to Borrower, and that any future Advances made by Pathward will not be deemed to be a waiver of the Existing Defaults or any other events of default.

2

Provided that there is no Forbearance Event of Default, Pathward may make Advances in Pathward's sole discretion in accordance with the revised Advance Formula described below which replaces the Advance Formula in the Loan Agreement and Schedule to Loan and Security Agreement thereto:

Advance Formula: Advances of the Loan may be measured against a percentage of Eligible Accounts and Eligible Inventory.

The Loan Amount may not exceed an amount which is the lesser of:

(a) Four Million and 00/100 Dollars ($4,000,000.00) ("Maximum Amount"); and

(b) the sum of:

(i) Ninety percent (90.0%) of Eligible Accounts,; PLUS

(ii) the lesser of (x) Seven Hundred Twenty-Five Thousand and 00/100 Dollars ($725,000.00), which shall reduce by $25,000.00 on May 4, 2023, and on the same day of each week thereafter until it reaches $0.00 where it shall remain, (y) Fifty percent (50%) of Eligible Inventory, and (z) Sixty-Five percent (65%) of (i) above; provided that, in no event shall the amount advanced against or attributable to Eligible Inventory consisting of pre-printed finished labels exceed Seven Hundred Thousand and 00/100 Dollars ($700,000.00).

(subparagraphs (i) – (ii) are collectively the "Advance Formula").

Pathward in its sole discretion may increase or reduce any percentage advance rate with respect to the Advance Formula.

7. Extra Rate: As stated in the Notice of Default, effective as of December 22, 2022, Pathward shall charge the "Extra Rate", which shall be equal to the Effective Rate plus two percent (2.00%) per annum. Pathward reserves the right in its sole discretion to increase the Extra Rate in the future up to the full amount provided.

8. Exit Fee: Provided Borrower satisfies the Indebtedness in full by the Termination Date, Pathward agrees to waive the Exit Fee provided for in Section 4: Exit Fee of the Schedule. In the event that Borrower has not satisfied the Indebtedness in full by the Termination Date, the Exit Fee will be reinstated in full.

9. Auction Proceeds. Borrower shall ensure that the Auction Proceeds are delivered to Pathward to be applied against the Indebtedness. To the extent Auction Proceeds are delivered to Borrower, Borrower shall immediately remit the Auction Proceeds to Pathward.

10. Auction Proceed Advance. Provided that there is no Forbearance Event of Default and that Pathward has received the Auction Proceeds in full, Pathward agrees to advance back to R.B. Dwyer Co., Inc. an amount up to the lesser of (i) One Hundred Fifty Thousand and NO/100's Dollars ($150,000.00), and (ii) the

3

amount of the Auction Proceeds received by Pathward, to be used solely for the cost of transportation of the Moved M&E and for other winding down expenses.

11. <u>Waiver and Release of All Claims and Defenses</u>. In consideration of Pathward executing this Agreement, Borrower and Guarantor do each hereby release and discharge Pathward of and from any and all claims, harm, causes of action, liabilities, injuries, expenses (including attorneys' fees) and damages of any and every kind, known or unknown, legal or equitable, which Borrower or Guarantor have against Pathward from the date of Borrower's and Guarantor's first contact with Pathward up to the date of this Agreement. Borrower and Guarantor confirm to Pathward that they have reviewed the effect of this release with legal counsel of their choice, or have been afforded the opportunity to do so, prior to the execution of this Agreement and each acknowledges and agrees that Pathward is relying upon this release in executing this Agreement.

12. <u>Termination Date</u>. The Termination Date shall be the earliest of (a) the date that a Forbearance Event of Default occurs, or (b) May 19, 2023.

13. <u>Guaranty Agreement.</u> As a specific inducement to Pathward, and in consideration of Pathward's reliance hereon, Guarantor hereby acknowledges and agrees to the terms and conditions of this Agreement and reaffirms its Guaranty.

14. <u>Forbearance Fee and Expenses</u>. In consideration of the forbearance offered under the terms set forth herein, Borrower will pay Pathward a Forbearance Fee in the amount of $2,000.00, which is fully earned upon execution of this Agreement. Pathward shall charge the Forbearance Fee against the Loan and such Forbearance Fee shall be non-refundable. Further, Borrower and Guarantor shall pay Pathward on demand all of Pathward's reasonable out-of-pocket expenses, including but not limited to, its reasonable attorney's fees.

15. <u>Additional Documents</u>. Borrower and Guarantor shall execute any and all additional documents requested by Pathward to evidence or effectuate the financial arrangements contemplated herein or contemplated in the Loan Documents.

16. <u>No Waiver or Promise.</u> Notwithstanding Pathward's expression of willingness to discuss the possibility of forbearance on the terms and conditions stated herein, no written or verbal communication or action by Pathward is, nor should it be construed as, a waiver of any defaults, claims, rights or remedies, or as a promise, agreement or representation of any kind, express or implied, on the part of Pathward to make other financial accommodations, or to forbear, postpone or refrain from taking any action with respect to the Loan Documents except as provided for in this Agreement. Borrower and Guarantor acknowledge, understand and agree that Pathward is under no duty or obligation of any kind whatsoever to extend or grant them any further period of forbearance, and no representations have been made to Borrower or Guarantor regarding any likelihood that any extension or continued forbearance will be granted.

17. <u>Counterparts</u>. This Agreement may be executed in any number of counterparts, each of which shall be deemed to be one and the same instrument.

[SIGNATURE PAGE TO FOLLOW]

IN WITNESS WHEREOF, the parties have executed this Forbearance Agreement effective as of the date first stated above.

"PATHWARD"

**PATHWARD, NATIONAL ASSOCIATION**

By: _____
Name: Sol Huizer
Its: Account Executive

"BORROWER"

**R. B. DWYER CO., INC.,**
a California corporation

By: _____
James B. Dwyer
Its: CEO and President

**IDEAL SLEEVES INTERNATIONAL, LLC,**
a Pennsylvania limited liability company

By: R. B. Dwyer Holding Co.,
    a Pennsylvania corporation
Its: Manager

    By: _____
    James B. Dwyer
    Its: President

**COLOR CRAFT FLEXIBLE PACKAGING, LLC,** a Tennessee limited liability company

By: R. B. Dwyer Holding Co.,
    a Pennsylvania corporation
Its: Manager

    By: _____
    James B. Dwyer
    Its: President

[Signature Page 1 of 2 to Forbearance Agreement]

Case 5:23-bk-01418-MJC    Doc 36-1    Filed 07/05/23    Entered 07/05/23 09:42:53    Desc
Exhibit A    Page 12 of 19

"GUARANTOR"

**R. B. DWYER GROUP PROPERTIES, LP,**
a Pennsylvania limited partnership

By: R. B. Dwyer Properties, Inc.,
     a Pennsylvania corporation
Its: General Partner

    By: _____
          James B. Dwyer
    Its: President

**R. B. DWYER HOLDING CO.,**
a Pennsylvania corporation

By: _____
    James B. Dwyer
Its: President

_____
JAMES B. DWYER, individually

[Signature Page 2 of 2 to Forbearance Agreement]

6

## SECOND AMENDED AND RESTATED FORBEARANCE AGREEMENT

THIS SECOND AMENDED AND RESTATED FORBEARANCE AGREEMENT (the "Agreement") is made as of the _____ day of May, 2023 (the "Effective Date"), by and between **PATHWARD, NATIONAL ASSOCIATION** ("Pathward"), fka Crestmark, a division of MetaBank, National Association, **R.B. DWYER CO., INC.**, a California corporation, **IDEAL SLEEVES INTERNATIONAL, LLC**, a Pennsylvania limited liability company and **COLOR CRAFT FLEXIBLE PACKAGING, LLC**, a Tennessee limited liability company (individually and collectively, the "Borrower"), and **R. B. DWYER GROUP PROPERTIES, LP**, a Pennsylvania limited partnership ("R. B. Dwyer Group"), **R. B. DWYER HOLDING CO.**, a Pennsylvania corporation ("R. B. Dwyer Holding"), and **JAMES B. DWYER**, individually ("Dwyer" and together with R. B. Dwyer Group and R. B. Dwyer Holding, the "Guarantor"). This Agreement amends and restates in their entirety the Forbearance Agreements (as defined below).

### RECITALS:

A.  Borrower and Pathward entered into that certain Loan and Security Agreement dated as of May 20, 2022 (as amended, the "Loan Agreement") pursuant to which Pathward agreed to make Advances to Borrower up to a Maximum Amount of $4,000,000.00 (the "Loan"), which Loan is evidenced by, among other documents, that certain Promissory Note dated May 20, 2022 (the "Note").

B.  Dwyer executed a Personal Guaranty dated May 20, 2022 (the "Personal Guaranty") and R. B. Dwyer Group and R. B. Dwyer Holding each executed a Guaranty dated May 20, 2022 and November 8, 2022, respectively (collectively, the "Corporate Guaranty" and together with the Personal Guaranty, the "Guaranty").

C.  The Loan Agreement, the Note, the Guaranty and all other documents executed in connection with the Loan shall be known collectively as the "Loan Documents". Unless defined herein, all capitalized terms used herein shall have the meaning set forth in the Loan Documents.

D.  Borrower is in default under the Loan Documents because Borrower failed to (i) immediately pay the portion of the Loan Amount that exceeds the Advance Formula, as required by Section 2.E. of the Loan Agreement, and (ii) timely pay all taxes when due as required under Section 11.D. of the Loan Agreement, each in direct violation of the Loan Agreement (the "Existing Defaults"). Pathward notified Borrower and Guarantor of the Existing Defaults in the Notice of Default dated December 22, 2022 (the "Notice of Default").

E.  Pathward, Borrower and Guarantor entered into a Forbearance Agreement dated January 4, 2023, as amended and restated by an Amended and Restated Forbearance Agreement dated as of May 4, 2023 (the "Forbearance Agreement").

F.  Borrower, Ideal Sleeves International, Inc. previously advised Pathward that it will no longer be operating after June 2023 and will be relocating some of the inventory, machines and equipment to R.B. Dwyer's Anaheim, CA and Memphis, TN locations (the "Moved M&E), while the remaining machinery and equipment will be auctioned off (the "Auctioned M&E").

G.  Borrower, Ideal Sleeves International, LLC and Pathward have entered into a Commission Sale Agreement with Winternitz Industrial Auctioneers & Appraisers dated as of April 7, 2023 for the sale at auction of the Auctioned M&E (the "Auction"), with all proceeds received therefrom being delivered directly to Pathward as a condition to Pathward's agreement to release its lien on the Auctioned M&E (the "Auction Proceeds"). The Auction took place on or about May 17, 2023.

H.  Notwithstanding the foregoing and without any obligation to do so and without waiving or relinquishing any rights or remedies, Pathward agrees to forbear from collection action under the Loan Documents and applicable law until the Termination Date (as defined herein), provided there is no Forbearance Event of

4887-4862-2694.v3

Default (as defined below) and subject to Borrower's and Guarantor's compliance with the requirements and conditions set forth herein.

NOW, THEREFORE, in consideration of the premises and the mutual covenants and agreements, the parties agree as follows:

1. <u>Governing Provisions</u>. The future administration of Borrower's and Guarantor's obligations to Pathward shall continue to be governed by the covenants, terms and conditions of the Loan Documents, except to the extent superseded, amended, modified or supplemented by this Agreement.

2. <u>Indebtedness</u>: All amounts due from Borrower to Pathward, whether now or in the future, under the Loan Documents shall be known in the aggregate as the "Indebtedness". The Indebtedness as of May 30, 2023 is $2,327,977.69, exclusive of any accrued and unpaid interest, all fees (including, without limitation, any exit fee), and any reasonable costs, expenses and attorneys' fees which Pathward has incurred or may hereafter incur, and for which the Loan Documents provide that Borrower is responsible.

3. <u>Acknowledgment of the Indebtedness, Existing Defaults, Recitals and Enforceability of Loan Documents.</u> Borrower and Guarantor each acknowledge and agree:

    A. To the amount, validity and enforceability of the Indebtedness;
    B. To the validity and enforceability of the Loan Documents;
    C. To the existence of the Existing Defaults; and
    D. That the Recitals herein are true and correct.

4. <u>Forbearance Event of Default.</u> A "Forbearance Event of Default" shall exist if any one or more of the following events shall hereafter occur:

    A. Any breach of or default of performance of any of the terms, conditions, warranties or representations set forth in this Agreement;

    B. Pathward in good faith deems itself insecure with respect to the prospect of payment and satisfaction of the obligations under the Loan Documents, the performance of or observance of the covenants set forth in the Loan Documents, or the value of its Collateral;

    C. Borrower's financial performance further materially deteriorates, as determined by Pathward; and

    D. The occurrence of any default as set forth in the Loan Documents, except as otherwise identified above or modified herein.

5. <u>Forbearance Terms:</u> Pathward agrees to temporarily forbear from exercising its rights under the Loan Documents until the Termination Date; <u>provided, however,</u> that on or before the Termination Date, Borrower and/or Guarantor shall make full and irrevocable repayment of the Loan and all Indebtedness then outstanding thereunder to Pathward by replacement financing from another lender or otherwise. .

6. <u>Discretionary Funding</u>: Borrower and Guarantor acknowledge that the Loan Documents provide for a discretionary lending arrangement and agree that Pathward has no obligation to lend against any Eligible Account or Eligible Inventory, or to make any further Advances to Borrower, and that any future Advances made by Pathward will not be deemed to be a waiver of the Existing Defaults or any other events of default.

Case 5:23-bk-01418-MJC    Doc 36-1    Filed 07/05/23    Entered 07/05/23 09:42:53    Desc
Exhibit A    Page 15 of 19

Provided that there is no Forbearance Event of Default, Pathward may make Advances in Pathward's sole discretion in accordance with the revised Advance Formula described below which replaces the Advance Formula in the Loan Agreement and Schedule to Loan and Security Agreement thereto:

>Advance Formula: Advances of the Loan may be measured against a percentage of Eligible Accounts and Eligible Inventory.
>
>The Loan Amount may not exceed an amount which is the lesser of:
>
>(a) Four Million and 00/100 Dollars ($4,000,000.00) ("Maximum Amount"); and
>
>(b) the sum of:
>
>>(i) Ninety percent (90.0%) of Eligible Accounts,; PLUS
>>
>>(ii) the lesser of (x) Six Hundred Fifty Thousand and 00/100 Dollars ($650,000.00), (y) Fifty percent (50%) of Eligible Inventory, and (z) Sixty-Five percent (65%) of (i) above; provided that, in no event shall the amount advanced against or attributable to Eligible Inventory consisting of pre-printed finished labels exceed Six Hundred Thousand and 00/100 Dollars ($600,000.00).
>
>(subparagraphs (i) – (ii) are collectively the "Advance Formula").
>
>Pathward in its sole discretion may increase or reduce any percentage advance rate with respect to the Advance Formula.

7. <u>Extra Rate:</u>  Interest has accrued on the unpaid principal of the Note at a rate equal to the Effective Rate provided under the Note plus two percent (2.00%) per annum effective as of December 22, 2022. Pathward reserves the right in its sole discretion to charge the full the Extra Rate provided under the Note.

8. <u>Exit Fee:</u>  Provided there is no Forbearance Event of Default and Borrower satisfies the Indebtedness in full by the Termination Date, Pathward agrees to waive the Exit Fee provided for in Section 4: Exit Fee of the Schedule, provided that in the event that any payment of the Indebtedness is avoided or if Pathward is required to disgorge any such payment thereafter, the Exit Fee will be reinstated in full.

9. <u>Auction Proceeds.</u>  Borrower shall ensure that the Auction Proceeds are delivered to Pathward to be applied against the Indebtedness. To the extent Auction Proceeds are delivered to Borrower, Borrower shall immediately remit the Auction Proceeds to Pathward.

10. <u>Auction Proceed Advance.</u>  Provided that there is no Forbearance Event of Default and that Pathward has received the Auction Proceeds in full, Pathward agrees to advance back to R.B. Dwyer Co., Inc. an amount up to the lesser of (i) One Hundred Fifty Thousand and NO/100's Dollars ($150,000.00), and (ii) the amount of the Auction Proceeds received by Pathward, to be used solely for the cost of transportation of the Moved M&E and for other winding down expenses.

11. <u>Waiver and Release of All Claims and Defenses.</u>  In consideration of Pathward executing this Agreement, Borrower and Guarantor do each hereby release and discharge Pathward of and from any and all claims, harm, causes of action, liabilities, injuries, expenses (including attorneys' fees) and damages of any and

3

every kind, known or unknown, legal or equitable, which Borrower or Guarantor have against Pathward from the date of Borrower's and Guarantor's first contact with Pathward up to the date of this Agreement. Borrower and Guarantor confirm to Pathward that they have reviewed the effect of this release with legal counsel of their choice, or have been afforded the opportunity to do so, prior to the execution of this Agreement and each acknowledges and agrees that Pathward is relying upon this release in executing this Agreement.

12. Termination Date. The Termination Date shall be the earliest of (a) the date that a Forbearance Event of Default occurs, or (b) June 16, 2023.

13. Guaranty Agreement. As a specific inducement to Pathward, and in consideration of Pathward's reliance hereon, Guarantor hereby acknowledges and agrees to the terms and conditions of this Agreement and reaffirms its Guaranty.

14. Forbearance Fee and Expenses. In consideration of the forbearance offered under the terms set forth herein, Borrower will pay Pathward a Forbearance Fee in the amount of $5,000.00, which is fully earned upon execution of this Agreement. Pathward shall charge the Forbearance Fee against the Loan and such Forbearance Fee shall be non-refundable. Further, Borrower and Guarantor shall pay Pathward on demand all of Pathward's reasonable out-of-pocket expenses, including but not limited to, its reasonable attorneys' fees.

15. Additional Documents. Borrower and Guarantor shall execute any and all additional documents requested by Pathward to evidence or effectuate the financial arrangements contemplated herein or contemplated in the Loan Documents.

16. No Waiver or Promise. Notwithstanding Pathward's expression of willingness to discuss the possibility of forbearance on the terms and conditions stated herein, no written or verbal communication or action by Pathward is, nor should it be construed as, a waiver of any defaults, claims, rights or remedies, or as a promise, agreement or representation of any kind, express or implied, on the part of Pathward to make other financial accommodations, or to forbear, postpone or refrain from taking any action with respect to the Loan Documents except as provided for in this Agreement. Borrower and Guarantor acknowledge, understand and agree that Pathward is under no duty or obligation of any kind whatsoever to extend or grant them any further period of forbearance, and no representations have been made to Borrower or Guarantor regarding any likelihood that any extension or continued forbearance will be granted.

17. Counterparts. This Agreement may be executed in any number of counterparts, each of which shall be deemed to be one and the same instrument.

[SIGNATURE PAGE TO FOLLOW]

IN WITNESS WHEREOF, the parties have executed this Forbearance Agreement effective as of the date first stated above.

"PATHWARD"

**PATHWARD, NATIONAL ASSOCIATION**

By: _____
Name: _____
Its: _____

"BORROWER"

**R. B. DWYER CO., INC.,**
a California corporation

By: _____
    James B. Dwyer
Its: CEO and President

**IDEAL SLEEVES INTERNATIONAL, LLC,**
a Pennsylvania limited liability company

By:   R. B. Dwyer Holding Co.,
      a Pennsylvania corporation
Its:  Manager

      By: _____
          James B. Dwyer
      Its:  President

**COLOR CRAFT FLEXIBLE PACKAGING, LLC,** a Tennessee limited liability company

By:   R. B. Dwyer Holding Co.,
      a Pennsylvania corporation
Its:  Manager

      By: _____
          James B. Dwyer
      Its:  President

[Signature Page 1 of 2 to Forbearance Agreement]

"GUARANTOR"

**R. B. DWYER GROUP PROPERTIES, LP,**
a Pennsylvania limited partnership

By: R. B. Dwyer Properties, Inc.,
a Pennsylvania corporation
Its: General Partner

By: _____
James B. Dwyer
Its: President

**R. B. DWYER HOLDING CO.,**
a Pennsylvania corporation

By: _____
James B. Dwyer
Its: President

_____
JAMES B. DWYER, individually

[Signature Page 2 of 2 to Forbearance Agreement]

6

4887-4862-2694.v3

Case 5:23-bk-01418-MJC    Doc 36-1    Filed 07/05/23    Entered 07/05/23 09:42:53    Desc
Exhibit A    Page 19 of 19